JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SHAHRIAR YAZDANI AND KATHY YAZDANI, | CASE NO. 2:11-cv-01540-JST |
| Debtors. | |
| SHAHRIAR YAZDANI AND KATHY YAZDANI, LAW OFFICE OF RAYMOND H. AVER, APC, | **ORDER AFFIRMING IN PART AND REVERSING IN PART BANKRUPTCY COURT** |
| Appellants, | |
| v. | |
| GEORGE BALANIS, | |
| Appellee. | |

1

Shahriar Yazdani, Kathy Yazdani (collectively "Debtors") and the Law Offices of Raymond H. Aver, APC (the "Aver Firm") appeal an order by the bankruptcy court granting George Balanis ("Appellee") (i) $35,000 that the court ordered disgorged from the trust account of the Aver Firm and (ii) an administrative claim for the remainder of the $75,000 escrow deposit made by Appellee to purchase property belonging to the Debtors' estate.  Debtors and the Aver Firm (collectively, "Appellants") also appeal the order denying their motion to reconsider those rulings.  Having considered the briefs and supporting documentation submitted by the parties, heard oral argument, and taken the matter under submission, the Court AFFIRMS in part and REVERSES in part.

## I.  BACKGROUND

On May 26, 2009, Debtors filed a voluntary bankruptcy petition under chapter 13 of the Bankruptcy Code.  (Appellants' Opening Brief ("App. Br.") at 3, Doc. 17.)  The Debtors' chapter 13 case was converted to one under chapter 11 on July 15, 2009, and then converted again to one under chapter 7 on January 21, 2011.  (*Id.*)

The Debtors' residential property located at 18460 Coastline Drive, Malibu, California (the "Coastline Residence") was a significant asset to their bankruptcy estate. (Appellant's Appendix ("App. Appx.") at 358, Doc. 18; Jan. 24, 2011 Tentative at 4.)  On August 2, 2009, Appellee and his wife entered into a California Residential Purchase Agreement and Joint Escrow Instructions along with various addendums, counter offers, and supplemental and amended escrow instructions (collectively, the "Purchase Agreement") for the Coastline Residence.  (App. Br. at 3.)  At that time, the Debtors were debtors in possession under chapter 11 of the bankruptcy code.  (Appellees' Reply Brief ("App'ee Reply") at 2, Doc. 19.)  When Appellee signed the Purchase Agreement, he made two deposits, one for $75,000 and one for $6,000, for a total deposit of $81,000 into an escrow account with All Cities Escrow.  (*Id.* at 3.)  Under the Purchase Agreement, the deposit would become nonrefundable "upon written release of all Buyer's contingencies which shall expire on August 28, 2009."  (App. Appx. at 120.)

2

1     Thereafter, on August 28, 2009, the parties executed an addendum to the Purchase
2  Agreement and Amended Escrow Instructions, pursuant to which the Debtors and
3  Appellee agreed "that Buyer release $75,000.00 of Buyer's good faith deposit, being held
4  by escrow, to Seller." (*Id*. at 130.)  Under the addendum, if "escrow [did] not close,
5  through no fault of [the] buyer" the funds were refundable "and seller and/or seller's
6  trustee [were required] to immediately return (within 2 business days) buyer's $75,000
7  earnest money deposit that was released." (*Id*. at 131.)  Pursuant to these instructions, the
8  escrow funds were released to the Debtors.  Upon release of the funds, the Debtors
9  transferred $25,000 to the Aver Firm's client trust account for the purpose of paying a
10 post-petition retainer.  Appellants conceded at oral argument that an additional $10,000
11 from Appellee's deposit was also transferred to the Aver Firm's trust account, for a total
12 retainer of $35,000.  The Debtors assert that much of the remainder of the deposit was used
13 to make various changes to the Coastline Residence and pay certain personal expenses of
14 the Debtors. (*Id*. at 294-95.)

15    On September 11, 2009, the Aver Law Firm filed its application for employment
16 under 11 U.S.C. § 328. (*Id*. at 64.)  The application set forth the terms of the firm's
17 proposed engagement, including that it would be paid a $25,000 retainer from the released
18 escrow funds:

19       The Yazdanis are currently in the process of selling their residence located at
20       18460 Coastline Drive, Malibu, California 90265.  An escrow has been
21       opened with regard to this sale and the purchaser has deposited $75,000.00
22       with escrow.  Under the terms of the Residential Purchase Agreement and
23       Joint Escrow Instructions, this $75,000 deposit has become non-refundable.
24       The Aver Firm will be paid $25,000.00 from the deposit as a post petition
25       retainer which will be deposited in the Aver Firm's attorney-client trust
26       account.  The Aver Firm may draw upon the retainer for post petition
27       attorneys' fees and costs incurred by the Yazdanis following the filing of
28       professional fee statements with the Office of the United States Trustee.

3

1  (*Id*. at 68.)  On October 5, 2009, the court entered an order for employment based on the

2  representations made in the application.  (*Id*. at 172-73.)

3      On October 9, 2009, the bankruptcy court issued an order authorizing the sale of the

4  Coastline Residence as a sale outside the ordinary course of business, under 11 U.S.C.

5  § 363(b).  (App. Br. at 5.)  Around mid-November 2009, the sale failed to close.  (*Id.*)  The

6  bankruptcy court, by its order on January 8, 2010, granted Appellee's request for the return

7  of the $81,000 deposit ("January 8th Order"), explaining that "[s]ince the escrow [failed to

8  close] through no fault of Appellee, they [sic] are entitled to the money back."  (App.

9  Appx. at 286.)  The Debtors filed a Motion for Reconsideration of the January 8th Order,

10  which the bankruptcy court denied because the Amended Escrow Instructions

11  characterized Appellee's deposit as refundable.  The Debtors did not appeal that order.

12      Despite the bankruptcy court's order, the Debtors returned only $6,000 of the total

13  $81,000 to Appellee.  (App'ee Reply at 4.)  Accordingly, Appellee moved for an order:

14  (1) requiring the Aver Firm to disgorge that portion of Appellee's deposit held in its client

15  trust account, and (2) granting Appellee an administrative priority claim for the remaining

16  balance of Appellee's deposit ("Appellee's December Motion").  (App. Appx. at 1-10.)

17  On December 14, 2010, the bankruptcy court issued an order directing Debtors' counsel to

18  pay Appellee all money in the Aver Firm's client trust account that was paid from the

19  released escrow deposit, and granting Appellee's request for an administrative claim for

20  the balance of the $75,000 not paid by the Aver Firm ("December 14th Order").  (*Id.* at

21  254-57.)  The Debtors subsequently filed a Motion to Reconsider, which was denied by the

22  bankruptcy court on February 9, 2011 ("February 9th Order").  (*Id.* at 358-60.)

23      Appellants appeal the December 14th Order and February 9th Order to this Court,

24  raising the following issues:  (1) whether the bankruptcy court abused its discretion in

25  ordering disgorgement of the Aver Firm's $35,000 retainer and return of the funds to

26  Appellee; (2) whether Appellee is entitled to an administrative claim for the remaining

27  balance of the $75,000 deposit less amounts paid out of the Aver Firm client trust account;

28

4

1   and (3) whether the bankruptcy court abused its discretion in denying the Debtors' motion
2   to reconsider.

3

4   **II.    STANDARD OF REVIEW**

5          The district court reviews de novo the bankruptcy court's conclusions of law, and
6   reviews for clear error the bankruptcy court's findings of fact.  *In re Int'l Fibercom, Inc.*,
7   503 F.3d 933, 940 (9th Cir. 2007).  The court reviews "the bankruptcy court's ultimate
8   decision whether to treat a particular claim as an administrative expense" for an abuse of
9   discretion.  *In re Kadjevich*, 220 F.3d 1016, 1019 (9th Cir. 2000).  It also reviews for abuse
10  of discretion the bankruptcy courts' denial of a motion to reconsider.  *In re Donovan*, 871
11  F.2d 807, 808 (9th Cir. 1989).

12         "[T]he district court may . . . affirm a bankruptcy court's order . . . on any ground
13  supported by the record."  *In re Crystal Prop., LTD.*, 268 F.3d 743, 755 (9th Cir. 2001)
14  (internal citations omitted).

15

16  **III.   ANALYSIS**

17         ***A.   The Bankruptcy Court Properly Ordered Disgorgement of the Aver Firm's***
18             ***Retainer and Return of the Funds to Appellee***

19             **1.    The Aver Firm's Non-Disclosure Rendered Disgorgement Proper**

20         Appellants first challenge the bankruptcy court's order disgorging from the Aver
21  Firm's client trust account the $35,000 retainer paid to the firm from the Appellee's
22  $75,000 escrow deposit.  The Court affirms.  Disgorgement of the full retainer amount was
23  proper because the Aver Firm failed accurately to disclose the source of the retainer funds.

24         The Aver Firm submitted its employment application in this case pursuant to
25  11 U.S.C. § 328, which permits the bankruptcy court to approve the employment of an
26  attorney "on any reasonable terms and conditions of employment, including on a retainer,
27  on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."
28  11 U.S.C. § 328(a).  Federal Rule of Bankruptcy Procedure 2014 requires a fee application

1    to disclose, among other things, "any proposed arrangement for compensation . . . . ." Fed.

2    R. Bankr. P. 2014(a).

3         "*[A]ll* retainers, regardless of type and when they are received, are subject to

4    disgorgement in response to disclosure violations." *In re Woodcraft Studios, Inc.*, 464

5    B.R. 1, 13 (N.D. Cal. 2011) (citing *In re Park-Helena Corp.*, 63 F.3d 877, 881 (9th Cir.

6    1995)).  A bankruptcy court's authority to deny or disgorge compensation is grounded in

7    its inherent authority over the debtor's attorney's compensation.  *In re Lewis*, 113 F.3d

8    1040, 1045-46 (9th Cir. 1997).  "Even a negligent or inadvertent failure to disclose fully

9    relevant information may result in a denial of all requested fees."  *In re Park-Helena*

10    *Corp.*, 63 F.3d at 882.

11         Disgorgement of the initial $25,000 retainer was proper because the Aver Firm

12    failed to disclose that it was paid from refundable escrow funds.  The agreement

13    authorizing the release of Appellee's $75,000 escrow deposit clearly provided that the

14    funds were fully refundable if the sale of the Coastline Residence failed through no fault of

15    the Appellee.  (App. Appx. at 131.)  That agreement was fully executed prior to the

16    submission of the application to employ the Aver Firm, and the bankruptcy court

17    accordingly determined that the parties, including the Aver Firm, were on notice of the

18    refundable character of the escrow funds.  (*Id.* at 345, 424.)  The Debtors' application to

19    employ the Aver Firm, however, provided the exact opposite, misrepresenting to the court

20    that "[u]nder the terms of the residential Purchase Agreement and Joint Escrow

21    Instructions, th[e] $75,000 deposit ha[d] become *non-refundable*."  (*Id.* at 68, ¶ 8,

22    emphasis added.)  Thus, the Aver Firm violated its obligation to disclose the true character

23    of its compensation arrangement with the Debtors and the bankruptcy properly ordered

24    disgorgement of the Firm's initial $25,000 retainer.

25         Disgorgement of the additional $10,000 retainer payment was also proper for the

26    same reasons.  In addition to the fact that the Aver Firm never disclosed the refundable

27    character of Appellee's deposit, the record is devoid of any evidence that the Aver Firm

28    ever made any disclosure to the bankruptcy court that it would receive an additional

1    $10,000 from the released escrow funds.  Accordingly, the Aver Firm also violated its

2    disclosure duties in regard to the $10,000 retainer payment, and that amount was properly

3    ordered disgorged.

4              **2.    Title of the Deposited Funds Remained with Appellee**

5            Having determined that the bankruptcy court properly ordered disgorgement of the

6    $35,000 retainer, the Court next considers whether the bankruptcy court properly ordered

7    the funds returned to Appellee.  It affirms.

8            "[F]ederal bankruptcy law generally leaves 'the determination of property rights in

9    the assets of a bankrupt's estate to state law.'"  *In re Dumont*, 581 F.3d 1104, 1112 (9th

10   Cir. 2009) (quoting *Butner v. United States*, 440 U.S. 48, 54 (1979)).  Accordingly, the

11   Court looks to California law to determine whether the disgorged retainer should be

12   returned to Appellee or to the Debtor's estate.  *In re Costas*, 555 F.3d 790, 793 (9th Cir.

13   2009) (looking to law of the forum state to determine property rights).

14           In California, when an escrow holder delivers purchase money to the seller before

15   the buyer receives title to the property under the conditions provided in the instructions,

16   the buyer may void the transaction and recover the money from the seller.  *See Lenchner v.*

17   *Chase,* 98 Cal. App. 2d 794, 802-03 (1950) (holding that the escrow funds released to pay

18   commissions prior to consummation of sale were refundable to buyer when a condition

19   was not satisfied in accordance with the purchase agreement).  The buyer retains title in the

20   deposited funds until the conditions of the transaction are satisfied.  *Love v. White,* 56 Cal.

21   2d 192, 194 (1961); *Vineland Homes v. Barish,* 138 Cal. App. 2d 747, 750-51 (1956).

22           Here, the Appellee's deposit was refundable under the escrow release addendum,

23   which provided that, "in the event the escrow does not close, through no fault of buyer,

24   release of funds is *not* 'non-refundable' and seller and/or seller's trustee [must]

25   immediately return . . . buyer's $75,000 earnest money deposit that was released."  (App.

26   Appx. at 131, emphasis added.)  The Purchase Agreement was never satisfied, and

27   Appellants concede that the failure of the sale was not due to the fault of the Appellee.

28

1    (Appellant's Reply at 5-6, Doc. 21.)  Therefore, Appellee retained title to the deposited
2    escrow funds because the conditions of escrow were not met.

3            Because Appellee retained title to the deposited funds, the funds never became
4    property of the estate.  *See In re Cochise College Park, Inc*., 703 F.2d 1339, 1356 (9th Cir.
5    1983) (concluding trustee had no right or title to payments made on breached contracts,
6    and, therefore, payments were not property of the estate).  The Debtors are therefore
7    obligated to return the escrow funds to Appellee.  *See id*. (holding trustee obligated to
8    return or hold in trust funds that never became property of the bankruptcy estate).
9    Accordingly, the bankruptcy court did not err in determining that Appellee was entitled to
10   the return of disgorged escrow funds in the amount of $35,000.

11

12           ***B.  The Bankruptcy Court Abused its Discretion in Awarding Administrative***
13                  ***Expense Priority to Appellee for the Return of the Remaining Amount of***
14                  ***the Escrow Deposit***

15           Appellants next challenge the bankruptcy court's conclusion that Appellee is
16   entitled to an administrative expense priority for the remaining escrow funds not deposited
17   into the Aver Firm's trust account.  For the following reasons, the Court reverses the
18   determination made by the bankruptcy court.

19           "In classifying the order of payment for creditors' claims, the Bankruptcy Code
20   affords the highest level of priority to 'administrative expenses.'"  *In re BCE West, L.P.*,
21   319 F.3d 1166, 1172 (9th Cir. 2003) (citing 11 U.S.C. § 507(a)(1)).  Section 503(b)(1)(A)
22   of the Bankruptcy Code "provides a nonexhaustive list of allowable administrative
23   expenses[, including,] 'the actual, necessary costs and expenses of preserving the estate,
24   including wages, salaries, or commissions for services rendered after the commencement
25   of the case."  *Kadjevich,* 220 F.3d at 1019-20 (quoting 11 U.S.C. § 503(b)(1)(A)); *see In re*
26   *Megafoods Stores, Inc.*, 163 F.3d 1063, 1071 (9th Cir. 1998).  "The availability of the
27   priority encourages third parties to deal with [an estate] that has filed in bankruptcy,
28

                                              8

1  because these parties will be paid ahead of other creditors." *In re BCE*, 319 F.3d at 1172
2  (citation and internal quotation marks omitted).

3  "The burden of proving an administrative expense claim is on the claimant." *Id.*
4  (citation and internal quotation marks omitted).  To limit the scope of administrative
5  expense priority, the Ninth Circuit requires a claimant seeking priority under section
6  503(b)(1)(A) to demonstrate that his claim:  "(1) [was] incurred postpetition, (2) [was] an
7  actual and necessary expense, and (3) directly and substantially benefit[ted] the estate." *In*
8  *re Lazar*, 207 B.R. 668, 674 (C.D. Cal. 1997) (collecting cases).

9  "The terms 'actual' and 'necessary' are to be construed narrowly and 'must be the
10  actual and necessary costs of preserving the estate for the benefit of its creditors.'" *In re*
11  *BCE*, 319 F.3d at 1173 (9th Cir. 2003) (quoting *In re Dant & Russell, Inc.*, 853 F.2d 700,
12  706 (9th Cir. 1988)).  In making such a determination, the court must weigh the need to
13  "maintain[] the estate in as healthy a form as possible for the benefit of the creditors, while
14  allowing essential costs of administering the ongoing business venture to be paid up front
15  [in order to give] the debtor its best shot at emerging as a vital concern." *In re Dant &*
16  *Russell, Inc.*, 853 F.2d at 707.

17  The requirement that an expense benefit the estate is also intended to protect the
18  assets of the estate for the benefit of unsecured creditors. *Id.* at 706.  Accordingly, it
19  requires that "[a]n actual benefit must accrue to an estate." *Id.* (citation omitted); *see In re*
20  *Allen Care Ctrs., Inc.*, 96 F.3d 1328, 1330 (9th Cir. 1996).

21  The bankruptcy court ruled that Appellee was entitled to administrative expense
22  priority for his refundable escrow deposit because a refundable deposit was "necessary" to
23  secure a buyer for the Coastline Residence.  (App. Appx. at 424-25.)  The bankruptcy
24  court's determination was based on two general conclusions:  (1) that deeming refundable
25  a deposit placed in escrow was required to induce buyers to contract with the estate and
26  facilitate the sale of property to pay creditors' claims (*id.* at 424-25), and (2) that the
27  released funds were used to make the Coastline Residence "more saleable and perhaps to
28  meet code requirements" (*id.* at 358; Jan. 24, 2011 Tentative at 4).  After reviewing the

9

1    bankruptcy court's order, the hearing transcript, and the record submitted by the parties on
2    appeal, the Court concludes that the bankruptcy court's decision to accord administrative
3    priority to the deposit in this case was an abuse of discretion.
4         As to the first basis for the bankruptcy court's finding of administrative priority, the
5    Court agrees with the general conclusion that an estate's assumption of a liability—i.e., an
6    expense—in the form of a refundable deposit could meet the requirements for
7    administrative expense priority under certain circumstances.  However, the bankruptcy
8    court's general conclusion that a deposit must be refundable to induce buyers to enter
9    residential purchase agreements does not support the conclusion that the release of the
10   refundable deposit in this case—the transaction which actually resulted in a liability to the
11   estate—was an actual and necessary cost of preserving the estate for the benefit of the
12   creditors.  Neither the bankruptcy court, nor the parties, cited to any evidence that the
13   *release of the funds* was necessary to secure a buyer for the property.  And the Court has
14   found none.  The failure to analyze the necessity of that transaction to the preservation of
15   the estate was an abuse of discretion.  *See In re Dant*, 853 F.2d at 707 (the bankruptcy
16   court's "discretion is limited by the clear intent of section 503(b)(1)(A):  the actual and
17   necessary costs of preserving the estate").
18        As to the second conclusion, the bankruptcy court's determination that the escrow
19   funds were used to render the Coastline Residence "more saleable and perhaps to meet
20   code requirements" is "without support in inferences that may be drawn from the facts in
21   the record."  *In re Marciano*, 459 B.R. 27, 34 (9th Cir. BAP 2011).  Rather, based upon
22   representations made in the Appellant's motion to authorize the sale of the Coastline
23   Residence and in Mr. Yazdani's declaration in support of that motion, the purpose of
24   selling the Coastline Residence was to reduce the *Debtors'* expenses, to generate funds to
25   pay the *Debtors'* bills, and to protect the *Debtors'* homestead exemption from equity
26   erosion.  (App. Appx. at 94-95, 99 ¶ 5.)  And Mr. Yazdani's declaration in support of
27   Appellant's motion for reconsideration explained that the released funds were used to
28   make various taste-specific alterations to the Coastline Residence that had been requested

by Appellee, such as removing landscaping from the backyard and pouring concrete, to make certain unspecified "repairs and improvements to the Coastline Residence," and to pay personal living expenses for the Debtors. (*Id.* at 294-95 ¶ 16.) None of this evidence supports the conclusion that the released funds were necessary to preserve the estate for the creditors or that they provided any actual benefit to the estate.

For the foregoing reasons, the Court reverses the bankruptcy court's order insofar as it awards administrative expense priority to the portion of Appellee's deposit that is not recovered from the Aver Firm's trust account.

### C. The Bankruptcy Court did not Abuse its Discretion in Denying the Appellants' Motion to Reconsider.

Appellants' final challenge is to the bankruptcy court's denial of their motion for reconsideration. Local Bankruptcy Rule ("LBR") 9013-4(a) sets forth several bases upon which a party may file a motion seeking reconsideration of a bankruptcy court's order. Appellants based their motion for reconsideration of the December 14th Order on the grounds that the bankruptcy court erred under LBR 9013-1(i)(1)[1] by accepting the impromptu testimony of Appellee at the hearing on Appellee's December Motion, and that such error constituted an "[i]rregularity in the proceeding of the court" under LBR 9013-4(a)(1) and an "accident or surprise that could not have been guarded against by the exercise of ordinary prudence" under LBR 9013-4(a)(4). (App. Appx. at 263-64, 273.)

Whether to afford relief under a motion to reconsider "is a matter within the discretion of the trial court 'according to the equities of the case.'" *In re Barker*, 306 B.R. 339, 347 (Bankr. E.D. Cal. 1995) (citations omitted). Here, the bankruptcy court properly

---

[1] LBR 9013-1(i)(1) provides:

The court may, at its discretion, in addition to or in lieu of declaratory evidence, require or allow oral examination of any declarant or any other witness in accordance with FRBP 9017. When the court intends to take such testimony, it will give the parties 2 days notice of its intention, if possible, or may grant such a continuance as it may deem appropriate.

11

denied Appellants' motion because Appellants failed to object to the admission of the Appellee's testimony. (App. Appx. at 418-21.) Accordingly, their objection to Appellant's testimony was waived. *See Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1066 (9th Cir.1996) ("By failing to object to evidence at trial and request a ruling on such an objection, a party waives the right to raise admissibility issues on appeal.").

## IV. CONCLUSION

For the foregoing reasons, the Court AFFIRMS in part and REVERSES in part the bankruptcy court's December 14th and February 9th Orders, and REMANDS to the bankruptcy court for further proceedings consistent with this Order.

DATED: March 21, 2012

JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE